(No. 71018.-

NOMA WEST, Appellee, v. PERRY M. KIRKHAM *et al.* (The City of Urbana, Appellant).

*Opinion filed January 30, 1992.—Rehearing denied March 30, 1992.*

Michael R. Cornyn and Howard W. Small, of Thomas, Mamer & Haughey, of Champaign, for appellant.

Andrew J. Kleczek, of Peoria (Diane E. Greanias, of counsel), for appellee.

Kelly R. Walsh, Corporation Counsel, of Chicago (Lawrence Rosenthal and Brian Trubitt, of counsel), for *amicus curiae* City of Chicago.

James T. Newman, of Cooney & Conway, and Josette Belvedere, both of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Noma West, brought the present action against defendants, the City of Urbana (the City), Perry M. Kirkham, Wheels, Inc., and Pfizer, Inc., to recover damages for injuries she sustained in an automobile accident. The City filed a motion for summary judgment, contending that the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) barred plaintiff's claim against it. (Ill. Rev. Stat. 1987, ch. 85, par. 1–101 *et seq.*) The trial court granted the City's motion. Plaintiff appealed and the appellate court reversed, holding that summary judgment in the City's favor was improper. (201 Ill. App. 3d 1051.) We granted the City's petition for leave to appeal (134 Ill. 2d R. 315). Only the liability of the City is at issue on this appeal.

Count IV of plaintiff's amended complaint is directed at the City. Count IV alleges that plaintiff was injured in an automobile collision with defendant Kirkham on June 9, 1988, at the intersection of Bradley Avenue and Lincoln Avenue (the intersection) in the City of Urbana. Plaintiff, traveling south on Lincoln Avenue, was in the

process of making a left turn onto eastbound Bradley Avenue when her automobile collided with Kirkham's vehicle in the intersection. Kirkham had been traveling north on Lincoln Avenue and was proceeding straight through the intersection when the collision occurred.

Plaintiff's complaint charges that the City proximately caused the collision by committing the following acts of alleged negligence: (a) failing to provide a left turn arrow for southbound traffic on Lincoln Avenue; (b) failing to provide warning of a "dip" in the street on Lincoln Avenue just south of the intersection which allegedly rendered northbound traffic momentarily obscured to southbound traffic; (c) failing to provide safe and proper traffic control devices (by failing to provide the aforementioned left turn arrow); (d) failing to provide warning of the obscured vision of oncoming traffic (caused by the alleged "dip"); and (e) failing to provide an adequate speed control sign for northbound traffic as it entered the "dip." The argument that the City's liability could be premised on plaintiff's allegations concerning the "dip" in the street and the obscured vision caused by that "dip" (allegations (b), (d) and (e), *supra*) was rejected by the appellate court and plaintiff has not appealed from that holding. (201 Ill. App. 3d at 1054.) Therefore, we will concern ourselves only with whether the City's alleged negligence in failing to provide a left turn arrow for southbound traffic on Lincoln Avenue was sufficient to preclude summary judgment.

The record reveals that Lincoln Avenue is a north-south street with two lanes in each direction. Bradley Avenue is an east-west street with one lane in each direction. Bradley Avenue is a main thoroughfare in Urbana up to its intersection with Lincoln Avenue. East of Lincoln Avenue, Bradley Avenue is an unpaved street, constructed of "rock and chip." The intersection of the two streets is controlled by "stop and go" traffic lights

in all four directions. There are no left turn lanes for any direction on either street. There is a left turn arrow provided for northbound traffic on Lincoln Avenue. No other direction has a left turn arrow. The speed limit on Lincoln Avenue is 35 miles per hour, and the speed limit on Bradley Avenue is 30 miles per hour. There is no dispute that the traffic signals provided at the intersection were working properly and were clearly visible at the time of the collision. Both plaintiff and Kirkham had a steady green light when they entered the intersection.

After hearing argument on the City's motion, the trial court granted summary judgment for the City, finding that the City's alleged negligence was immunized by the Tort Immunity Act. The appellate court reversed, holding that the City's alleged negligence in failing to provide a left turn arrow was not immunized. The sole issue before us is whether the City may be liable for its failure to provide a left turn arrow for southbound traffic on Lincoln Avenue. We now reverse the appellate court and affirm the order of the trial court granting summary judgment in favor of the City.

The tort liability of municipalities is governed by the Tort Immunity Act. (*Goebig v. City of Chicago* (1989), 188 Ill. App. 3d 614, 616; *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 87.) The Act confers immunity upon local governments and their employees for liability arising out of the "operation of government." (Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1.) Most pertinent to this appeal is section 3—104 of the Act. Section 3—104 provides as follows:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the *failure to initially provide* regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs,

overhead lights, traffic separating or restraining devices or barriers." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 85, par. 3—104.

The City contends that plaintiff's claim against it fits squarely within the immunity granted by section 3—104. We agree. Plaintiff's complaint charges the City with *failing to provide* a left turn arrow for traffic on southbound Lincoln Avenue. No claim is made that the existing devices were not working properly or were defective in any way; rather, it is only the failure to provide a particular traffic device that is alleged. Section 3—104, by its express terms, confers immunity upon a municipality where an injury is caused by the failure to initially provide a "traffic control device." A left turn arrow certainly qualifies as a "traffic control device." Where the language of a statutory provision is clear, a court must give it effect. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) Thus, by the express mandate of section 3—104, the City cannot be liable for the failure to install a left turn arrow for southbound traffic on Lincoln Avenue, even if such failure was negligent and was a cause of plaintiff's injury. Summary judgment in the City's favor was therefore proper pursuant to section 3—104 of the Tort Immunity Act.

Plaintiff argues that the language of section 3—104 granting immunity for the failure to "initially" provide a device means only that no liability will attach if the municipality was without notice that the lack of the device created a dangerous condition. Plaintiff thus asserts that section 3—104 bestows immunity only for the "initial" injury and that, once a municipality is aware that the failure to provide a particular device has caused an injury, the immunity no longer attaches for future injuries. We disagree.

Plaintiff attempts to find a substantial limitation on the immunity of section 3—104 where none exists. The

language of the provision is unconditional; no reference is made in section 3—104 to notice or lack of notice on the part of the governmental entity. In this regard, it is instructive to compare the language of section 3—104 to that of two other provisions in the Tort Immunity Act. Section 3—102(a) of the Act, which imposes a duty on municipalities to maintain public property in a safe condition, specifically states that the municipality will be immune from liability *unless* it had actual or constructive notice of the unsafe condition. (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).) Section 3—103(a) grants immunity for injury caused by a municipality's adoption of a plan or design for a public improvement where that plan or design is approved by the proper authority. That section goes on to specifically *exclude* from the scope of that immunity, those situations in which it *appears from the use of the plan or design* that an unsafe condition has been created. (Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a).) Thus, in those sections, the legislature, in clear and deliberate language, expressed its intent to *limit* those sections' immunity to situations where the municipality was *without notice* that it had created an unsafe condition. To the contrary, section 3—104 contains *no* language which expresses an intent to *limit* that section's immunity to situations in which the municipality was without notice that the lack of a particular device was unsafe. Furthermore, section 3—104 contains *no* language which indicates an intent to *impose* a duty on municipalities to provide a particular traffic control device where the municipality has notice that the failure to so provide has proved to be unsafe. Rather, section 3—104 clearly and unequivocally states that the municipality is *immune* from all liability arising out of the failure to provide a particular traffic control device.

Bolstering our interpretation of the scope of section 3—104 is the legislative history of that section. The leg-

islative history of a statutory provision provides valuable insight into the legislature's intent. (See *In re Marriage of Logston*, 103 Ill. 2d at 279.) Section 3—104 was amended in 1986 to read as it does at present. The pre-1986 version of section 3—104 provided as follows:

> "(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs.
>
> (b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." Ill. Rev. Stat. 1985, ch. 85, par. 3—104.

Thus, under subsection (b) of the predecessor version of section 3—104, it was possible to hold a municipality liable for the *failure to provide* a traffic warning sign or device if such was "necessary to warn of a condition which endangered the safe movement of traffic." When the legislature amended section 3—104 in 1986, it *deleted* subsection (b) in its entirety. Moreover, in addition to deleting subsection (b), the amendment *added* "warning sign, device or marking" and "overhead lights, traffic separating or restraining devices or barriers" to the list of traffic devices a municipality was immunized for failing to provide. The legislature thus clearly intended to enlarge the scope of section 3—104's immunity and to immunize *absolutely* the failure to initially provide a traffic control device, even where such failure might "endanger the safe movement of traffic."

The applicability of section 3—104 to a similar claim of municipal negligence was recently addressed by our appellate court in *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074. In that case, the plaintiff was injured when his motorcycle was struck by an automobile driven by the defendant driver. The plaintiff sued the defendant driver, the City of Chicago, and a contractor hired by the City to perform reconstruction work on the street on which the collision occurred. The City of Chicago had closed the three northbound lanes of the street and had converted the three southbound lanes into one lane each for northbound and southbound traffic. The complaint charged the City with negligence in that it allegedly: (1) failed to erect barricades between northbound and southbound traffic; (2) failed to erect any protective devices at the point of the collision; and (3) failed to warn of traffic entering the northbound lanes from the southbound lanes. (*Newsome*, 202 Ill. App. 3d at 1076.) The City moved to dismiss the plaintiff's claim for failure to state a cause of action and the trial court granted the City's motion. *Newsome*, 202 Ill. App. 3d at 1075.

The appellate court in *Newsome* held that the dismissal of the plaintiff's claim against the City of Chicago was proper. The court determined that the specific acts of negligence alleged in the plaintiff's complaint were immunized by section 3—104 of the Tort Immunity Act. The court found that section 3—104 expressly barred a claim against the City for its failure to provide median barriers, warning signs or other protective devices. (*Newsome*, 202 Ill. App. 3d at 1078.) We agree with the *Newsome* court's interpretation of the scope and effect of section 3—104. In accordance with that interpretation, we find that the acts of negligence with which the City of Urbana is herein charged are immunized by section 3—104.

Plaintiff further argues that the immunity of section 3—104 does not apply in this case because the City had already installed a left turn arrow for northbound traffic on Lincoln Avenue and her claim was therefore not premised on an "initial" failure to provide. Plaintiff apparently contends that the City, having undertaken to "provide" left turn devices for the intersection, had the duty to provide them symmetrically. The appellate court agreed with plaintiff, finding that the City's "partial regulation" of the intersection precluded the City from enjoying immunity under section 3—104. (201 Ill. App. 3d at 1053-54.) The appellate court went on to hold that liability could be imposed on the City for the failure to provide a left turn arrow for southbound traffic on Lincoln Avenue solely because it had provided such an arrow for northbound traffic on Lincoln Avenue. 201 Ill. App. 3d at 1054.

We find that the exception to section 3—104 urged by plaintiff and accepted by the appellate court is unwarranted and would effectively swallow the section's immunity entirely. The creative plaintiff, seeking to premise an action on the failure to provide a particular traffic device, could always circumvent section 3—104 by finding and pointing out some *other* traffic device that *was* provided. We do not believe that the legislature intended such a narrow construction of section 3—104, particularly considering the changes wrought by the 1986 amendment.

Parenthetically, we note that the appellate court relied almost exclusively on *Smith v. County of White* (1989), 191 Ill. App. 3d 569, in finding that section 3—104 did not apply in this case. In *Smith*, the appellate court held that the defendant county was not immunized by section 3—104 for its failure to post a sign warning motorists of a dangerous curve in a highway. (*Smith*, 191 Ill. App. 3d at 577.) However, the collision in *Smith* oc-

curred prior to the 1986 amendment of section 3—104 and the court based its holding on subsection (b) of the predecessor version of the statute. Thus, the holding of the *Smith* court, to the extent it relied on the deleted section 3—104(b), is no longer viable. The *Smith* court also noted, however, that an additional reason for upholding the plaintiff's claim was that section 3—104(a) (of the predecessor version) did not apply because the county *had* installed a sign warning of the curve on the approach to the curve opposite to that used by the plaintiff. The court determined that the plaintiff's claim therefore was not premised on an "initial" failure to provide. (*Smith*, 191 Ill. App. 3d at 577.) As noted, we disagree with the conclusion that section 3—104 may be circumvented by such reasoning. Thus, to the extent that the holding in *Smith* conflicts with this opinion, it is overruled.

Our interpretation of section 3—104 better serves the policy behind the Tort Immunity Act than does that urged by plaintiff or that accepted by the appellate court in this case and in *Smith*. Section 1—101.1 of the Act states the expressed purpose of the Act. According to that section, the Act is intended to "protect local public entities and public employees from liability arising from the operation of government." (Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1(a).) The "operation of government" necessarily encompasses the policy decisions made by a municipality; that is, those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests. The decision whether to install a traffic signal requires the municipal traffic planner to balance a host of competing interests, among them, safety, convenience and cost. In the instant case, the City could have determined that the competing interests were best served by installing a left turn arrow for northbound

traffic on Lincoln Avenue, but not for southbound traffic on Lincoln Avenue. The fact that Bradley Avenue is unpaved on the east side of Lincoln Avenue may have resulted in the conclusion that left turns onto eastbound Bradley Avenue would be too infrequent to justify the expenditure of tax dollars for a left turn arrow. Regardless, this is not the sort of decision that should be second-guessed by the courts. Were such second-guessing permitted, the traffic planner would be more concerned with avoiding possible litigation than with using his best judgment to properly balance the competing interests. Thus, instead of seeking the best balance of safety, convenience and cost, the traffic planner would concern himself only with whether it could later be argued that the regulation provided could have possibly been safer. Excessive regulation, with no corresponding gain in safety, convenience or cost efficiency, would be the natural result. The legislature recognized this by enacting section 3—104 and expressly immunizing the failure to provide a traffic control device or sign.

Plaintiff finally urges this court to find that the City had a duty to provide a left turn arrow for southbound traffic on Lincoln Avenue pursuant to sections 3—103(a) or 3—102(a) of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, pars. 3—103(a), 3—102(a)). Contrary to plaintiff's assertions, neither of these sections supports plaintiff's argument. Section 3—103(a) provides:

"A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of

such plan or design it appears from its use that it has created a condition that it [*sic*] is not reasonably safe. Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a).

Plaintiff argues that the City executed a traffic "plan or design" for the intersection, which "plan or design" created an unsafe condition by failing to provide a left turn arrow for southbound traffic on Lincoln Avenue. We note that plaintiff made no allegation in her complaint that the City had implemented a traffic "plan or design" for the intersection. Defects in a party's pleadings cannot be cured by argument. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 427.) Regardless, we do not believe that a "plan or design" within the meaning of section 3—103(a) was implemented by the City in this case.

In *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, this court determined that the location of a speed limit sign did *not* constitute a plan or design within section 3—103(a). Likewise, we find that the City of Urbana's decision to install traffic controls at the intersection did not constitute the implementation of a "plan or design" such that liability under section 3—103(a) could be invoked. Plaintiff's interpretation of "plan or design" would render the immunity of section 3—104 meaningless. The provision of *any* sign or device could be argued to be the implementation of a "plan or design" which renders the City liable for the failure to include some other sign or device. We thus find that the City could not be held liable to plaintiff under section 3—103(a).

Neither is section 3—102(a) of any aid to plaintiff. That section provides:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in

a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).

Plaintiff argues that the City had a duty to install a left turn arrow for southbound traffic on Lincoln Avenue as part of its duty to maintain its property under this section. Plaintiff's argument ignores the opening phrase of the section, which states, "[e]xcept as otherwise provided in this Article." It is "otherwise provided" in section 3—104, which is located in article III with section 3—102(a), that a municipality does *not* have a duty to *provide* traffic control devices. Thus, the obligation to provide traffic control devices is expressly excluded from the purview of the general duty to maintain found in section 3—102(a). This limitation on the scope of the duty in section 3—102(a) is in keeping with the scope of that duty as it existed at common law. The Tort Immunity Act creates no new duties but merely codifies those existing at common law. (*Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 92; *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 87.) At common law, a municipality had a duty to maintain its property in a safe condition, but this duty did *not* extend to creating or erecting public improvements. (*Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 770; *Swett*, 169 Ill. App. 3d at 92.) Once a public improvement was actually constructed, the municipality had a duty to maintain it in a reasonably safe condition; however, no liability could be imposed for the failure to undertake the improvement in the first place. (*Swett*, 169 Ill. App. 3d at 92.) As noted, there is no allegation in this case that the City

failed to maintain the existing traffic controls in proper working order. Section 3—102(a) thus does not provide a basis for the City's liability to plaintiff.

Accordingly, for the aforesaid reasons, we reverse the judgment of the appellate court and affirm the trial court's granting of summary judgment in favor of the City of Urbana.

*Appellate court reversed;*
*circuit court affirmed.*