JEFFREY ROBINSON, Indiv. and as Next Friend of Brandi Robinson, a Minor, *et al.*, Plaintiffs-Appellants, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant (Allen Township, Defendant-Appellee).

Third District   No. 3—93—0261

Opinion filed February 10, 1994.—Rehearing denied March 14, 1994.

Janssen, Maher, Wertz & Miller, of Peoria (Jay H. Janssen, of counsel), for appellants.

Kristine A. Karlin, of Judge & James, Ltd., of Park Ridge (Jay S. Judge, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This action arose out of a collision between an automobile and a train at a railroad crossing in Allen Township in La Salle County. The plaintiffs, Jeffrey Robinson, individually and as next friend of Brandi Robinson, a minor, and Phyllis Robinson, administratrix of the estate of Bernard Robinson, deceased, appeal from the dismissal with prejudice of paragraphs 13(e) through 13(i) of their second amended complaint against the defendant, Allen Township, and also from the granting of summary judgment in favor of the township on the remaining counts of the complaint. The plaintiffs have reached a settlement with defendant Atchison, Topeka & Santa Fe Railway Company and the allegations of the complaint against that defendant are not involved in this appeal. The plaintiffs raise four issues for our consideration: (1) whether the defendant township had a duty to place railroad advance warning signs on North 15th Road, south of the railroad crossing; (2) whether the township had a duty to maintain the advance warning sign that was present on North 15th

Road 10 years prior to the accident; (3) whether the township had a duty to place a stop sign in the vicinity of the railroad crossbucks; and (4) whether there is a genuine issue of fact as to whether the illegal grade of the crossing proximately caused the collision in question. We affirm.

The accident out of which this action arose occurred on December 2, 1988, at approximately 7:55 p.m. According to the plaintiffs' second amended complaint, Pamela Robinson was driving a 1974 Cadillac in which Bernard Robinson and Brandi Robinson were passengers. They were proceeding westbound on North 15th Road, and then turned north on 24th Road. After turning on to 24th Road, they crossed the railroad tracks of the Atchison, Topeka & Santa Fe Railway Company. Their vehicle was struck by a westbound train. Bernard Robinson was killed and Brandi Robinson suffered serious injuries.

The plaintiffs filed a second amended complaint in which counts IX through XII were directed at this defendant. The plaintiffs alleged numerous acts of negligence on the part of the defendant. Specifically, the plaintiffs alleged violations of various provisions of the Illinois Manual on Uniform Traffic Control Devices for Streets and Highways and also various rules of the Illinois Commerce Commission (ICC). The defendants filed a motion to dismiss. The court granted the motion with respect to paragraphs 13(e) through 13(i) of counts IX, X, and XI. Those paragraphs contained the following allegations of negligence:

"e) Allen Township failed to properly install a stop sign in the vicinity of the crossbucks.

f) Allen Township failed to place a stop sign as directed by the Illinois Manual on Uniform Traffic Control Devices for Streets and Highways 'at the point where the vehicle is to stop or as near thereto as possible' which is in the position where the motorist would be at right angles with the railroad tracks immediately before the Railroad Tracks.

g) Allen Township violated the mandatory condition 'shall' in not placing a Railroad Advance Warning Sign on the roadway in advance of the grade crossing in violation of the 'Manual' 8B—3.

h) Allen Township violated the mandatory condition 'shall' in not replacing the Railroad Advance Warning sign on the roadway in advance of the grade crossing in violation of the 'Manual' 8B—3 when said advance warning was present on March 11, 1978, but was absent at the time of this collision.

i) Allen Township violated the duty to apply for and obtain flashers and gates at this crossing after the 1978 collision and before the 1988 collision."

On appeal, the plaintiffs first argue that the court erred in

dismissing the above paragraphs of their complaint because the defendant had a duty to place railroad advance warning signs on North 15th Road, south of the railroad crossing. The defendant responds that it has immunity pursuant to section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—104 (West 1992)). That section provides as follows:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers."

The supreme court in *West v. Kirkham* (1992), 147 Ill. 2d 1, 588 N.E.2d 1104, read this section broadly and found its language to be unconditional. The court's decision in *West* effectively disposes of this argument by the plaintiffs and also the argument that a stop sign was necessary in the vicinity of the crossbucks. The court noted that section 3—104 "clearly and unequivocally states that the municipality is *immune* from all liability arising out of the failure to provide a particular traffic control device." (Emphasis in original.) (*West*, 147 Ill. 2d at 7, 588 N.E.2d at 1107.) The *West* court further found that the legislature's intent in amending this section in 1986 was to immunize absolutely the failure to initially provide a traffic control device, even where that failure might endanger the safe movement of traffic. *West*, 147 Ill. 2d at 8, 588 N.E.2d at 1108.

■ The plaintiffs argue that the township is not immune because the Manual on Uniform Traffic Control Devices provides that railroad advance warning signs are mandatory on roadways in advance of every grade crossing. Neither the express language of section 3—104 nor the supreme court's interpretation of that section in *West* provides for an exception for mandatory warning signs. Further, even if such an exception did exist, it would not apply to this case. The road in advance of the railroad crossing was 24th Road, on which there was an advance warning sign. The plaintiffs argue that there should have been such a sign on 15th Road, the road *parallel* to the railroad tracks. The defendants correctly point out that the manual makes placement of railroad advance warning signs on parallel roads optional. We therefore conclude that the court did not err in dismissing paragraphs 13(e) through (i) of counts IX through XI of the plaintiff's second amended complaint.

■ The plaintiffs have also made the argument that even if the township had no duty to initially place a railroad advance warning

sign on North 15th Road, it did have a duty to maintain the sign that had once been there. The plaintiffs had evidence that, at the time of another accident at this same crossing in 1978, there was a railroad advance warning sign on North 15th Road. Section 3—104, by its terms, immunizes only an *initial* failure to place traffic control devices. Section 3—102(a) (745 ILCS 10/3—102(a) (West 1992)) provides that local public entities have a duty to use ordinary care to maintain their property in a reasonably safe condition. Nevertheless, we do not view this case as being an instance of a failure to maintain a sign. The term "maintenance" implies repair and upkeep. What the plaintiffs are essentially arguing is that, because the township once had a warning sign on 15th Road, it is now forever required to have one there. As previously noted, the decision whether to place a railroad advance warning sign on a parallel road is discretionary. Likewise, the decision to remove such a sign would also be discretionary. This is not a case in which a warning sign had fallen into a state of disrepair or had fallen over. Rather, the deposition testimony indicated that no warning sign had been in place on 15th Road for at least three years prior to the accident. The plaintiffs pled no facts indicating that the township was maintaining a railroad advance warning sign on 15th Road at the time of the accident and had failed to keep it in proper repair. Consequently, the plaintiffs did not adequately allege a breach of the duty provided for in section 3—102(a).

The remaining allegations of the complaint concerned the grade of 24th Road as it approached the railroad crossing. Specifically, the plaintiffs alleged the following negligent acts on the part of the defendant:

"a) Violated Illinois Administrative Code, Section 1535.204

(a) in that the grade of 24th Road, the approaching roadway, exceeded five (5%) percent.

b) Violated Illinois Administrative Code, Section 1535.207

(c) by failing to arrange with the defendant railroad necessary track and crossing adjustments to maintain the grade of 24th Road as it approached the crossing at a degree of less than five (5%) percent.

c) Failed to conduct and/or maintain 24th Road as it approached the railroad crossing to comply with Illinois Administrative Code, Section 1535.204 when Defendant knew that said Railroad crossing had a history of a similar motorist-train collision at this crossing on March 11, 1978.

d) Failed to devise a plan to improve the approach grade on either side of the crossing so as to comply with 92 Illinois Administrative Code, Section 1535.204 when it knew the section of the

approach it maintained and constructed did not comply with the aforesaid regulation and that the grade was a cause of a similar fatal collision on March 11, 1978."

The defendant moved for summary judgment with respect to these allegations and argued that the ICC rules relied on by the plaintiffs were not intended to improve the visibility of a railway crossing for a driver approaching that crossing. The defendant also argued that the plaintiffs could not establish that the grade of the crossing proximately caused the accident. The court agreed with the defendant on both arguments and granted the motion for summary judgment. The plaintiffs now argue that the court erred in granting summary judgment in favor of the defendant because a genuine issue of material fact existed as to whether the illegal grade of the crossing proximately caused the accident.

Summary judgment shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) A motion for summary judgment is properly granted where no triable issue of fact exists. (*Waite v. Chicago Transit Authority* (1987), 157 Ill. App. 3d 616, 510 N.E.2d 1176.) The appropriate standard of review regarding summary judgment is to determine if the trial court properly decided there were no material issues of fact and that the judgment was correct as a matter of law. *Johnston v. Tri-City Blacktop, Inc.* (1991), 217 Ill. App. 3d 388, 577 N.E.2d 529.

In order to recover for a defendant's violation of a statute or rule designed to protect human life or property, a plaintiff must show: (1) the violation proximately caused the injury; (2) plaintiff belonged to the class of persons whom the rule was intended to protect from injury; and (3) the kind of injury sustained by plaintiff was the kind of injury which the rule sought to prevent. *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 537 N.E.2d 738.

■ The plaintiffs contend that the grade approach to the railroad tracks was too steep and violated the 5% requirement of ICC Rule 204 (92 Ill. Adm. Code § 1535.204 (1992)). The deposition testimony of plaintiffs' expert witness, Robert Lippman, indicated that the grade was 5.1%. We initially note that we consider this violation to be *de minimis*. While proximate cause is ordinarily a question of fact, it becomes a question of law where reasonable people could not differ as to the inferences to be drawn from undisputed facts. (*Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 560 N.E.2d 974.) We believe that no reasonable person could conclude that the one-tenth of 1% violation was the proximate cause of the accident.

Further, we do not believe that the passengers in the car belonged to the class of persons whom the rule was intended to protect from injury. The plaintiffs' expert witness, Robert Lippman, testified in his deposition that the purpose of the grade requirement is to prevent low-slung vehicles from getting stuck on the track. Our supreme court, in *Dunn*, further elaborated that the grade requirement was enacted to make the crossing easier upon the vehicle, to prevent it from getting stuck on the tracks, to allow the driver to get across the tracks quickly, and to give the driver a better view up and down the tracks. (See *Dunn*, 127 Ill. 2d at 370-71, 537 N.E.2d at 747.) Here, plaintiffs have argued that the grade of the approach prevented the car's headlights from shining on the crossbucks. However, the *Dunn* court noted that "the foregoing rules pertain either to the condition of the crossing itself, *** or to a motorist's lateral view, not his view of what lies directly in front of him." (*Dunn*, 127 Ill. 2d at 369, 537 N.E.2d at 746.) The plaintiffs have also included a sentence in their appellate brief that the steepness of the grade prevented Pamela Robinson from looking up and down the tracks. Not only did this allegation not appear in their complaint, their own expert testified in his deposition that the grade of the crossing would not prevent a driver from looking up and down the tracks. We therefore conclude that the trial court did not err in granting summary judgment in favor of the defendant.

For all of the above reasons, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

BARRY and BRESLIN, JJ., concur.