DEANNA CORNING, Plaintiff-Appellant, v. EAST OAKLAND TOWNSHIP *et al.*, Defendants-Appellees.

Fourth District   No. 4—96—0168

Argued August 22, 1996.—Opinion filed September 12, 1996.

Thomas A. Bruno and James B. Kuehl (argued), both of Thomas A. Bruno & Associates, of Urbana, for appellant.

Bruce E. Warren and Bianca I. Truitt (argued), both of Thomas, Mamer & Haughey, of Champaign, for appellees East Oakland Township and Randy Strader.

Alvin C. Paulson, of Becker, Paulson & Hoerner, P.C., of Belleville, for appellee Coles County.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Plaintiff Deanna Corning was injured when she drove her automobile through a rural "T" intersection and into a ditch. Plaintiff filed a complaint against defendants East Oakland Township, Randy Strader (the township's road supervisor), and Coles County, alleging that her injuries resulted from defendants' failure to maintain the intersection in a reasonably safe condition. Specifically, plaintiff alleged that the intersection had become unreasonably dangerous because a stop sign erected by defendants had been removed by persons unknown and not replaced. Defendants moved to dismiss the complaint, contending that they were shielded from liability under sections 2—201 and 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2—201, 3—104 (West 1994)). The trial court dismissed the complaint with prejudice. We reverse and remand.

For purposes of review of the complaint's legal sufficiency, we take all well-pleaded facts as true. *Straub v. City of Mt. Olive*, 240 Ill. App. 3d 967, 973, 607 N.E.2d 672, 676 (1993). The accident occurred at approximately 1:47 a.m. on August 4, 1994, at the intersection of county roads 2050 North and 2400 East. County Road 2050 North runs north-south for a short distance, then curves to the west for northbound traffic approximately 200 yards to the east of its intersection with 2400 East. Defendants erected an arrow sign to indicate that the road curves. At the point of intersection, 2400 East runs north-south and 2050 North runs east-west. The roads come together as a "T," with 2050 North temporarily ending at the intersection. A drainage ditch runs parallel to 2400 East on the road's west side. At the time of the accident, the intersection was unlit and obscured from motorists' view by tall corn growing in the surrounding fields.

Defendants had erected a stop sign at the intersection for westbound travelers on 2050 North, but it had been removed by

persons unknown. The sign post was left standing. Plaintiff does not know how long the sign was missing, but she alleges that it was missing a sufficient period of time that defendants should have discovered its absence during the normal course of road maintenance. Without a stop sign, the intersection became dangerous because motorists were likely to drive straight through. Plaintiff, who was unfamiliar with the roads, drove through the intersection and into the drainage ditch parallel to 2400 East.

Plaintiff alleged, *inter alia*, that defendants breached the following duties: (1) they failed to exercise ordinary care to maintain the intersection, (2) they failed to have a reasonable inspection system of signs and traffic control devices, (3) they failed to maintain the stop sign in a legible manner, (4) they failed to discover that the sign was missing, (5) they failed to replace the stop sign, (6) they failed to erect the stop sign in such a manner to make its removal by vandals or acts of nature unlikely, and (7) they failed to warn plaintiff of the dangerous condition caused by the missing sign by posting barricades or other traffic control devices. The complaint contained two counts against each defendant, one premised on negligence, the other premised on wilful and wanton misconduct.

The trial court found that the Act afforded defendants immunity, and it dismissed the complaint. It is unclear whether the court believed the defendants immune under section 2—201, section 3—104, or both. 745 ILCS 10/2—201, 3—104 (West 1994). We hold that section 2—201 is inapplicable, and section 3—104 provides defendant with only a partial shield.

■ The Act governs the tort liability of local government entities and their employees. The Act confers no new duties; rather, it delineates certain immunities. *West v. Kirkham*, 147 Ill. 2d 1, 14, 588 N.E.2d 1104, 1110 (1992). Not all common law duties are abrogated by the Act. Section 3—102 codifies the common law duty of local public entities to maintain their property in reasonably safe condition. *Swett v. Village of Algonquin*, 169 Ill. App. 3d 78, 92, 523 N.E.2d 594, 604 (1988). The common law duty to maintain did not extend to creating or erecting public improvements. *West*, 147 Ill. 2d at 14, 588 N.E.2d at 1110. However, once having undertaken the construction of public highways and traffic control devices, public entities have a duty to install and maintain them with reasonable care. *Ellison v. Village of Northbrook*, 272 Ill. App. 3d 559, 563, 650 N.E.2d 1059, 1062 (1995).

Plaintiff has adequately alleged that she was injured as a proximate result of defendants' failure to maintain their stop sign. Defendants contend, however, that their failure to maintain and

replace the missing sign was a discretionary act, and such exercises of discretion are afforded immunity under the Act.

■ Sections 2—109 and 2—201 of the Act provide:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2—109 (West 1994).

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1994).

The common law recognized a distinction between discretionary duties, the negligent performance of which does not subject a government entity to tort liability, and ministerial duties, the negligent performance of which can subject a municipality to tort liability. *Snyder v. Curran Township*, 167 Ill. 2d 466, 473, 657 N.E.2d 988, 992 (1995). Section 2—201 of the Act has been interpreted to be a codification of this common law distinction. *Snyder*, 167 Ill. 2d at 473, 657 N.E.2d at 992. Discretionary acts are those which are unique to the particular public office and involve the exercise of judgment, while ministerial acts are those performed in a prescribed manner, in obedience to the mandate of legal authority, without regard to the exercise of discretion as to the propriety of the acts being done. *Kennell v. Clayton Township*, 239 Ill. App. 3d 634, 639, 606 N.E.2d 812, 816 (1992).

In *Snyder*, the supreme court held that the Illinois Manual on Uniform Traffic Control Devices (92 Ill. Adm. Code § 546.100 *et seq.* (Supp. 1986)) mandated placement of a warning sign in a certain location, and thus the defendant township was without discretion to place the sign elsewhere. *Snyder*, 167 Ill. 2d at 475, 657 N.E.2d at 993. Defendants maintain that because no regulations govern the maintenance and replacement of stop signs, their failure to maintain and replace the missing sign was an act of discretion.

■ Defendants' argument contains a fatal flaw. Here, plaintiff has alleged that the intersection became unreasonably dangerous when the sign was stolen without defendants' knowledge or authority. "Discretion" connotes a conscious decision. Defendants exercised discretion in deciding to erect a stop sign; nothing indicates they decided to remove it. Arguably, the decision not to maintain or inspect their property was an act of discretion, but this is "an impermissibly expansive definition of discretionary immunity." *Snyder*, 167 Ill. 2d at 472, 657 N.E.2d at 992. Every failure to maintain property could be described as an exercise of discretion under

defendants' expansive approach. We do not believe that the legislature intended such a result, otherwise it would not have codified the common law duty to maintain property under section 3—102 of the Act. 745 ILCS 10/3—102 (West 1994).

This does not mean that once a public entity erects a sign it may never exercise its discretion to remove it. In *Robinson v. Atchison, Topeka & Santa Fe Ry. Co.*, 257 Ill. App. 3d 772, 629 N.E.2d 209 (1994), the third district upheld summary judgment in favor of the defendant township because it had exercised its discretion in removing a sign. The plaintiffs were injured in a collision at a railroad crossing. The evidence established that the defendant had posted a warning sign 10 years earlier but no sign was in place for at least three years prior to the accident. Under these facts, the court concluded that plaintiff failed to establish that defendants were maintaining a warning sign in proper repair. The court wrote:

> "What the plaintiffs are essentially arguing is that, because the township once had a warning sign on 15th Road, it is now forever required to have one there. As previously noted, the decision whether to place a railroad advance warning sign on a parallel road is discretionary. Likewise, the decision to remove such a sign would also be discretionary. This is not a case in which a warning sign had fallen into a state of disrepair or had fallen over." *Robinson*, 257 Ill. App. 3d at 776, 629 N.E.2d at 212.

*Robinson* suggests that in a case where a sign has fallen into disrepair, discretionary immunity would not apply. That is essentially what plaintiffs have alleged here: the stop sign fell into disrepair because of vandalism. As we take the well-pleaded facts as true, there is no basis to conclude that defendants exercised their discretion in removing the stop sign. This does not mean that defendants cannot establish discretionary immunity under any set of facts. We simply hold that dismissal on the pleadings pursuant to section 2—201 of the Act was improper.

■ Defendants next contend that because under section 3—104 of the Act they had no duty to erect a stop sign, they cannot be held liable for injuries resulting from a sign's absence. Plaintiff maintains that once defendants have undertaken to erect a sign, they may be liable for inadequate maintenance of that sign.

Section 3—104 of the Act provides:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to *initially* provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking,

signs, overhead lights, traffic separating or restraining devices or barriers." (Emphasis added.) 745 ILCS 10/3—104 (West 1994).

The crux of the dispute is what effect, if any, should be given the word "initially" in section 3—104 of the Act. 745 ILCS 10/3—104 (West 1994). In *West*, the plaintiff sued a municipality after being injured in a collision at an intersection. The municipality had installed a left-turn traffic signal for northbound traffic, but it had not installed such a signal for southbound traffic. The plaintiff alleged she was injured as a result of the municipality's failure to provide a turn signal for southbound traffic, and that the municipality was no longer immune under section 3—104 of the Act once it had initially undertaken to provide a signal for northbound traffic. The supreme court disagreed and held that the municipality was immune under section 3—104 for its failure to install another traffic signal. The court reasoned, "[t]he creative plaintiff, seeking to premise an action on the failure to provide a particular traffic device, could *always* circumvent section 3—104 by finding and pointing out some *other* traffic device that *was* provided." (Emphasis in original.) *West*, 147 Ill. 2d at 10, 588 N.E.2d at 1108.

Relying in part upon *West*, Presiding Justice Steigmann concluded that a proper construction of section 3—104 of the Act requires that the word "initially" simply be read out of the statute. *Gapinske v. Town of Condit*, 250 Ill. App. 3d 1045, 1049, 619 N.E.2d 1383, 1386 (1993). Under the broad reading of section 3—104 announced in *Gapinske*, a sign's absence could never form the basis of liability for a public entity, regardless of whether that public entity had ever undertaken to provide a sign. Justice Lund dissented, arguing that once a government body decided to provide a sign, it had a duty to install and maintain it in a reasonably safe condition. *Gapinske*, 250 Ill. App. 3d at 1051-53, 619 N.E.2d at 1387-89 (Lund, J., dissenting). See also *Gapinske*, 250 Ill. App. 3d at 1050-51, 619 N.E.2d at 1387 (Cook, J., specially concurring) ("The word ['initially'] may be used to distinguish between the failure to initially provide a sign, for which there is immunity, and the failure to replace a damaged or stolen sign, for which there may be liability under the town's duty to maintain its property").

We conclude the broad reading of section 3—104 announced in *Gapinske* is no longer viable because the supreme court has indicated in *Snyder* that the word "initially" is to be given effect. The court wrote:

"[T]he crux of defendant's oral argument was that it is illogical for the Immunity Act to absolutely immunize a public entity's initial failure to erect a traffic warning device (see 745 ILCS 10/

3—104 (West 1992); *West*[, 147 Ill. 2d 1, 588 N.E.2d 1104]), but fail to extend this absolute immunity once the traffic warning device is erected. What defendant and the appellate court failed to recognize, however, is that it is not for the courts to extend this statutory immunity or to fill the perceived interstices of the Immunity Act: that is strictly the province of the General Assembly." *Snyder*, 167 Ill. 2d at 477, 657 N.E.2d at 994.

See also *Jefferson v. City of Chicago*, 269 Ill. App. 3d 672, 678, 646 N.E.2d 1305, 1310 (1995) (holding that nothing in the *West* decision justifies *Gapinske*'s excision of the word "initially" from section 3—104).

Defendants cite *Culver v. Velcor*, 247 Ill. App. 3d 589, 616 N.E.2d 1013 (1993), for the proposition that section 3—104 of the Act immunizes a public entity's decision not to maintain and replace a sign that it had erected. Properly understood, *Culver* stands for the opposite proposition. In *Culver*, the State of Illinois erected and maintained a stop sign at an intersection. The sign was knocked down or removed. As a result, plaintiff drove through the intersection and collided with another vehicle. Plaintiff sued the county, alleging that the county failed to erect another sign or warning devices. The second district held that the county was immune under section 3—104 because it never initially erected the sign. That decision was made by the State. The *Culver* decision suggests that had the county initially provided the sign, it could have been liable for its failure to maintain it. *Culver*, 247 Ill. App. 3d at 596, 676 N.E.2d at 1017-18.

Here, defendants initially provided a stop sign. Had they not done so, they could not have been held liable for not posting a sign at a dangerous intersection. Once the decision to post a sign was made, they had a duty to maintain the sign with reasonable care. Under *West*, however, they had no duty to erect additional warning devices simply because they erected the stop sign. The trial court properly struck those counts of the complaint which allege defendants failed to warn plaintiff of the missing sign by posting barricades or other traffic control devices, but those counts premised on a failure to maintain the stop sign should not have been dismissed.

Reversed and remanded for further proceedings in accordance with this opinion.

STEIGMANN and KNECHT, JJ., concur.