**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220377-U

Order filed January 4, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| JANE ROE, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-22-0377 |
| | ) | Circuit No. 18-L-603 |
| | ) | |
| BOARD OF EDUCATION OF | ) | Honorable |
| COMMUNITY HIGH SCHOOL DISTRICT 99 | ) | Robert G. Kleeman, |
| and WILLIAM MILLER, | ) | Judge, Presiding. |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Board of Education of Community | ) | |
| High School District 99, | ) | |
| | ) | |
| Defendant-Appellee). | ) | |

JUSTICE ALBRECHT delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

**ORDER**

¶ 1       *Held*:   The circuit court erred in granting defendant's motion to dismiss based on the theory that defendant was immune from liability under the Tort Immunity Act.

¶ 2        Plaintiff, Jane Roe, appeals the judgment of the circuit court of Du Page County that dismissed a count of her complaint against defendant Board of Education of Community High School District 99 (the District) pursuant to section 2-619(a)(9) of the Code of Civil Procedure, arguing that the District did not establish that it was immune from liability. 735 ILCS 5/2-619(a)(9) (West 2018). Defendant William Miller is not a party to the present appeal. We reverse and remand the cause for further proceedings.

¶ 3                     I. BACKGROUND

¶ 4        In May 2018, Roe filed suit against William Miller and the District. The suit stemmed from allegations of sexual abuse in which Roe alleges that, from the 2002 school year until the 2006 school year, Miller, a music teacher and band director at Downers Grove North High School (DGN), engaged in an inappropriate sexual relationship with Roe, who was under the age of 18 and a student at the school during that time.

¶ 5        Count I of Roe's third amended complaint alleged that the District operated and managed DGN during the time that Roe was a student there. Miller was employed at this time, and his responsibilities were to organize and operate the music department, which caused him to interact with students on a daily basis during and after school hours. Roe was involved in extracurricular activities under Miller's supervision.

¶ 6        Roe alleged that during her attendance at the school, Miller groomed and sexually abused her. Specifically, Roe alleged that Miller would take her out of classes to speak with her alone, ask questions regarding her relationship with her boyfriend, tell her about his own relationship with his wife, and send her electronic communications through email and online chat messages that became sexual in nature, culminating in the two having video sex *via* a web camera. Much of the sexual abuse occurred on school property while Roe was a minor. Roe further alleged that

2

several members of the staff, including Miller's direct supervisor, were aware of and in a position to observe the abuse as it occurred. No staff member ever reported any abuse against her or any other student.

¶ 7 Sometime in spring 2006, the DGN principal, Maria Ward, acquired knowledge of Miller's alleged grooming and sexual abuse of minor female students and requested a meeting with Roe and her mother. The complaint is silent as to how Roe and her mother responded during the meeting with Ward but alleged that Ward "blamed" Roe for the rumors that Miller was having an improper relationship with her. No disciplinary action against Miller occurred after this meeting.

¶ 8 The complaint also accused Miller of having relationships with other female students during his tenure at the school over a ten-year period. Miller's direct supervisor and other unnamed faculty members witnessed these inappropriate interactions and did not report Miller. Roe argued that the District's failure to report any abuse violated the Abused and Neglected Child Reporting Act (Reporting Act). 325 ILCS 5/4 (West 2006).

¶ 9 Finally, Roe alleged in her complaint that the District acted willfully and wantonly because it was aware of the abuse, ignored it, and took no action until another former student made social media posts regarding her own abuse. These posts occurred in November 2017. After the posts were made public, the District placed Miller on administrative leave. Miller resigned the next month.

¶ 10 Count II of the complaint contained allegations against Miller and do not pertain to this appeal.

¶ 11 Early on, Roe made several efforts to begin the discovery process that the District opposed. Specifically, Roe filed a Supreme Court Rule 191(b) affidavit requesting discovery

3

pertaining to what extent the District knew of Miller's activities and if any acts of concealment occurred. Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). The matter proceeded to motion practice without discovery taking place.

¶ 12        The District filed a motion to dismiss Roe's third amended complaint under section 2-619 of the Code of Civil Procedure, arguing that the claim was barred by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2006)). In its motion and accompanying memorandum, the District argued that Roe's claims against it were barred by section 2-201 of the Tort Immunity Act. 745 ILCS 10/2-201 (West 2006). It argued that the District was immune from liability for any injury resulting from its exercise of discretionary authority, namely decisions related to the hiring, retention, supervision, and training of Miller, and other decisions related to internal investigations. The District further argued that it had a policy in place describing how to investigate accusations such as Roe's, and that any decisions related to the implementation and enforcement of those procedures were immune from liability.

¶ 13        Attached to the motion to dismiss, the District included an affidavit signed by Dr. Hank Thiele, the District's superintendent. The affidavit stated that the District had policies in place at the time of Roe's alleged abuse related to personnel, child abuse, and sexual harassment. One of the policies also included an explanation of what constituted child abuse for the purposes of reporting such incidents under the Reporting Act. Those policies were disseminated to staff on an annual basis. Thiele averred that in preparing his affidavit he specifically reviewed the faculty handbook that was in effect when Roe was in school and confirmed that the District had policies and procedures in place regarding handling and reporting circumstances of suspected child abuse during that timeframe.

4

¶ 14    Relating to Miller, the affidavit stated that the District did not learn of allegations against Miller until 2017, at which time he was placed on administrative leave and later resigned. There was no reference in the affidavit to the principal's meeting with Roe and her mother or whether the District's policies were actually followed in this case. It also did not reference the allegations in Roe's complaint that other staff members, specifically Miller's supervisor, were aware of the abuse and did not act.

¶ 15    The personnel policies pertaining to sexual abuse that were in effect during the 2005-2006 school year were attached to the affidavit. These policies required school personnel to make a report to DCFS if he or she had "reasonable cause to believe" a child may be abused or neglected. Also attached was the staff sexual harassment policy, which required any incident of sexual harassment to be reported to the designated school official to further investigate.

¶ 16    In response to the District's motion, Roe argued that it did not meet its burden of proving its immunity under the Tort Immunity Act, because it did not establish both a policy determination and discretionary act, and those elements were not apparent on the face of the complaint. Roe also pointed out that courts have found that it is difficult to draw generalizations from case law involving the Tort Immunity Act because it requires such a fact-intensive analysis of each situation. Further, she argued that many courts have found that there are not enough facts established before discovery to determine whether a public entity does indeed have immunity under the Tort Immunity Act. Roe argued that the same is true here, and there are not enough facts established to properly determine whether immunity applied until discovery took place.

¶ 17    After arguments, the circuit court dismissed the count against the District with prejudice, finding that the Tort Immunity Act precluded any finding of liability against it. In its oral findings, the court first found that the District, in having a policy concerning sexual harassment,

5

"implemented a policy, considered competing interests as to what should or shouldn't be in the policy, and decided to implement it." This in itself, the court held, was an exercise of discretion. It also stated that the supervision and retention of Miller was a discretionary act under the policy manual and that decision was immune from liability.

¶ 18       Regarding the meeting between Ward, Roe, and Roe's mother, the court found that Ward was notified of allegations and investigated those allegations by questioning Roe. The court further found that:

> "[T]he principal in this case was put on notice that there were allegations of an inappropriate relationship between the minor and Defendant Miller. *** I don't know what happened, but they did not fire him after that. They chose to retain him after that. They didn't further any investigation – do any further investigation after that, and they did not report it. I have no idea why. I have no idea.
> It certainly would appear, given everything that's in here, that – and certainly with the benefit of hindsight that was a poor decision, to say the very least.
>
> * * *
>
> But the question is, was there the exercise of discretion, not whether it was a good exercise of discretion or a proper exercise of discretion. Was discretion exercised? Did it involve a policy decision requiring balancing of competing interests and a judgment call?
>
> * * *
>
> [M]y duty tells me that under the cases that have been cited, I do find that the facts, as alleged, including the affidavit, meet that standard that it did involve

6

a policy decision requiring the balancing of competing interests and a judgment call was made with respect to each of those three."

¶ 19    Roe appealed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, Roe argues that the District did not prove it was immune under the Tort Immunity Act. Roe specifically contends that the District's actions regarding Miller and his conduct at the school were not policy determinations, nor were they exercises of discretion. Thus, the District cannot be immune from liability, and the circuit court erred in ruling as such. Alternatively, Roe also argues that even if the District successfully presented its affirmative defense, she met her own burden of proving that this defense requires the resolution of material facts alleged, which may only be done through the discovery process. It is therefore too early in the litigation process for the court to have granted the District's motion to dismiss.

¶ 22    The circuit court granted the District's section 2-619 motion to dismiss on the grounds that its actions were immune from liability by the Tort Immunity Act. Section 2-619(a)(9) of the Code of Civil Procedure admits the legal sufficiency of the complaint and all well-pleaded facts therefrom and allows involuntary dismissal of a plaintiff's claim where the claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). When ruling on a section 2-619 motion to dismiss, the court construes the pleadings in the light most favorable to the nonmoving party. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. An affirmative matter is "something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004).

¶ 23    The affirmative matter asserted by the District in its motion to dismiss must be apparent on the face of the complaint, or else must be supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997); *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Here, the District may present affidavits to support the asserted defense of being exempt from liability under the Tort Immunity Act. If the District satisfies the initial burden of presenting this affirmative defense, the burden shifts to Roe to "establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven." *Betts v. City of Chicago*, 2013 IL App (1st) 123653, ¶ 14 (quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill.2d at 116). " 'If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed.' " *Epstein*, 178 Ill.2d at 383 (quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill.2d at 116). Our review from a section 2-619 motion dismissal is *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 24    The Tort Immunity Act serves to protect public entities and employees from liability arising from the operation of government. 745 ILCS 10/1-101.1(a) (West 2006); *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 479 (2002). The immunities afforded under the Tort Immunity Act serve as affirmative defenses, which, if properly raised and shown, bar a plaintiff's right to recovery. *Arteman*, 198 Ill. 2d at 479.

¶ 25    Specifically, section 2-201 of the Tort Immunity Act provides:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from its act or omission in determining policy when acting in

8

the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2018).

A defendant claiming immunity under section 2-201 must prove that the acting employee "either held a position involving the determination of a policy or a position involving the exercise of discretion," and must also have engaged in both the determination of policy and the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Reyes v. Board of Education of City of Chicago*, 2019 IL App (1st) 180593, ¶ 51; see also *Monson v. City of Danville*, 2018 IL 122486, ¶ 29.

¶ 26      A policy choice is one which "require[s] the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 379 (2003). Discretionary acts are "unique to a particular public office." *Arteman*, 198 Ill. 2d at 484-85. Discretion " 'connotes a conscious decision.' " *Monson*, 2018 IL 122486, ¶ 33 (quoting *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 768 (1996)). The entity claiming immunity must present sufficient evidence that it made a conscious decision not to act. *Id.* The failure to do so is fatal to the claim. *Id.*

¶ 27      In contrast to discretionary acts, ministerial acts, which are not protected under the Tort Immunity Act, are performed "on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." (Internal quotation marks omitted.) *Reyes*, 2019 IL App (1st) 180593, ¶ 51. The distinction between discretionary and ministerial acts " 'resists precise formulation' and can be made only on the particular facts established in a particular case." *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 923 (C.D. Ill. 2009) (quoting *Snyder v. Curran Township*, 167 Ill. 2d 466,

474 (1995)). Accordingly, it "is difficult to draw generalizations from case law applying Section 2-201." *Id.* at 922.

¶ 28    Application of Section 2-201 is an affirmative defense, and defendants have the burden of proof on the issue. *Van Meter*, 207 Ill. 2d at 379. The plaintiff is not required to address it in their complaint. *S.G. v. Rockford Board of Education*, 2008 WL 5070334 at *8. As a result, and due to the fact-intensive nature of the necessary analysis, courts often refuse to grant immunity under Section 2-201 at the motion-to-dismiss stage. See *Doe v. School District U-46*, 557 F. Supp. 3d 860, 877-78 (N.D. Ill. 2021).

¶ 29    Roe argues that the circuit court erred in finding that section 2-201 of the Act applied because once the District became aware of an employee sexually abusing a student, any discretion the District may have had was eliminated by the requirement that the matter must be reported to DCFS under the Reporting Act. 325 ILCS 5/4 (West 2006). The Reporting Act provides that school personnel "having reasonable cause to believe" a minor known to them in their professional capacity may be an abused or neglected child, "shall immediately report or cause a report to be made to [DCFS]." *Id.* DCFS is the authority with discretion to substantiate the accuracy of the reports, not the District. Thus, once school personnel suspect or should suspect that a child may be sexually abused, the school is divested of any discretion to determine what constitutes a "reasonable cause to believe" or whether such abuse actually occurred.

> "If school personnel were allowed to determine whether reasonable cause existed or whether such abuse actually occurred before reporting the matter to DCFS, the goal of protecting children would be undermined. Although the school board may initially investigate the credibility of any rumors of sexual abuse, whether there

was reasonable cause to report the allegations is an objective determination." *Doe v. Dimovski*, 336 Ill. App. 292, 297 (2003).

¶ 30    The District contends that Ward investigated the rumors relating to Miller's relationship with Roe and determined that the accusations were not credible. Its stance is that it had the discretion to investigate to determine whether the accusations were credible and whether there was "reasonable cause to believe" abuse was occurring, thus Ward's actions are immune from liability. It also argues that, when the rumors of sexual abuse were left unconfirmed by Roe, there was no reason to suspect sexual misconduct. We find there is a distinct difference between an affirmative report and an outright denial that any abuse occurred. To be clear – neither the third amended complaint nor Thiele's affidavit provide any insight as to what transpired when Ward summoned Roe and her mother to her office. Without any further evidence regarding what occurred during the meeting, we cannot say that Ward exercised discretion in determining that the accusations against Miller were not credible and did not warrant a report to DCFS.

¶ 31    Moreover, the complaint includes several allegations that other staff members were aware of incidents of sexual abuse that are not addressed by the District. The circuit court focused its analysis on Roe's meeting with Ward and did not make any determinations regarding the allegations in the complaint that other members of staff knew about the inappropriate relationship between Roe and Miller and chose not to intervene. The District submits only Thiele's affidavit stating that the District had no knowledge of the alleged abuse until 2017. While the parties discussed the contents of several other affidavits during their arguments before us, those affidavits were obtained and filed in connection with a prior motion for a prior complaint. As we must only look at the contents of the third amended complaint, the corresponding motion to dismiss, and the only affidavit to accompany that motion, these prior

11

affidavits are not relevant for the purposes of our analysis. See *Epstein*, 178 Ill. 2d at 383. Thiele's affidavit merely states that the District had a policy to handle suspected abuse and that the District was not aware of any allegations against Miller until 2017 when he was placed on administrative leave. It does not address whether the policy was implemented in this case or how these staff members determined that the allegations were incredulous and that there was no need to report them to DCFS.

¶ 32 We do not know whether the decision to stop further investigations into Miller was a "conscious decision" or an oversight, since the record does not include any facts about how that decision was made. See *Courson ex rel. Courson v. Danville School District No. 118*, 333 Ill. App. 3d 86, 88 (2002) (act or omission could be neither discretionary nor ministerial, but simply an oversight for which there would be no immunity). There are insufficient details in the record as to how Ward reached the conclusion that she did not have to report to DCFS. The record is also silent on how other staff members handled the situation and reached the same conclusion. Additionally, Thiele's affidavit is contradictory to the District's argument. Thiele avers that the District was not aware of any inappropriate behavior, but the District continues to argue that discretionary actions were involved in making the decision not to report Miller. The District cannot say both that it made a discretionary, conscious decision not to act and also that it was not aware of anything that would require it to make such a conscious decision.

¶ 33 Accordingly, we cannot determine, based on the record before us, whether section 2-201 immunity applies to the District's actions surrounding Roe and her allegations of sexual abuse. See *White*, 627 F. Supp. 2d at 923-24 (not applying section 2-201 immunity on a motion to dismiss where questions remained about whether all the actions were discretionary, or some were ministerial and there was no evidence about what competing interests were balanced). Based on

12

the allegations provided in the complaint, along with the District's motion to dismiss, there is no indication whether policy determinations were made and what discretionary acts occurred, if there were indeed acts of discretion in this case. Where facts necessary to sustain the District's affirmative defense are not apparent on the face of the complaint and not supported by affidavits or other materials in the record, the District is not entitled to dismissal. See *Monson*, 2018 IL 122486, ¶ 31 n.1. There is simply not enough information in the record to warrant a dismissal at this early stage in the proceedings. We therefore must reverse the circuit court's dismissal of the District from the case and remand for further proceedings.

¶ 34                                    III. CONCLUSION

¶ 35          The judgment of the circuit court of Du Page County is reversed and remanded for further proceedings not inconsistent with this order.

¶ 36          Reversed and remanded.