NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250332-U

NO. 4-25-0332

IN THE APPELLATE COURT

FILED
February 13, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| HEATHER McGOWND, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Peoria County |
| ILLINOIS-AMERICAN WATER COMPANY, an | ) | No. 23LA227 |
| Illinois Corporation; THE CITY OF PEORIA; and | ) | |
| NEHEMIAH DOYLE, | ) | Honorable |
|     Defendants | ) | Frank Ierulli and |
| (The City of Peoria and Nehemiah Doyle, | ) | Timothy J. Cusack, |
|     Defendants-Appellees). | ) | Judges Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court committed no error in granting defendants' motion to dismiss plaintiff's claims against them with prejudice, finding defendants immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2024)).

¶ 2    Following a single-vehicle accident at a road construction site, plaintiff, Heather McGownd, sued defendants—Illinois-American Water Company, an Illinois Corporation (American Water); the City of Peoria (City); and Nehemiah Doyle, a police officer for the City—seeking to recover damages for injuries she sustained as a result of the accident. The trial court granted a motion by the City and Doyle to dismiss plaintiff's claims against them, finding the Local Governmental and Governmental Employees Tort Immunity Act (Act ) (745 ILCS 10/1-101 *et seq.* (West 2024)) applied and barred plaintiff's claims. Plaintiff appeals, arguing the court erred in granting the City and Doyle's motion to dismiss with prejudice and denying her leave to file an

amended complaint. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In October 2022, American Water performed excavation work on one of the City's streets, creating an opening or hole in the roadway. On the evening of October 10, 2022, plaintiff drove her vehicle into the opening, resulting in her alleged injuries.

¶ 5         In October 2023, plaintiff initiated the underlying action, filing her original complaint against defendants. In June 2024, she filed an eight-count second amended complaint, which is at issue on appeal. In her action against American Water, plaintiff raised claims of negligence, willful and wanton misconduct, and breach of contract (counts I, II, and III). (The record reflects American Water moved to dismiss plaintiff's breach of contract claim but answered her remaining claims against it. The trial court granted American's Water's motion to dismiss count III. Plaintiff does not challenge that ruling on review and American Water is not a party to this appeal.) Against the City, plaintiff raised claims of negligence and willful and wanton misconduct (counts IV and V). Against Doyle, she alleged negligence, voluntary undertaking, and willful and wanton misconduct (counts VI, VII, and VIII).

¶ 6         According to the common allegations of plaintiff's second amended complaint, American Water and the City had "entered into an agreement" whereby American Water agreed to provide water service to the City's residents and businesses. The parties' water service contracts "were issued as [City] Ordinances" and provided that American Water "was responsible for the maintenance and repairs of the [City's] water infrastructure system," including water pipes located under the City's roadways. Prior to and on October 10, 2022, American Water performed work on its water system underneath one of the City's streets, specifically, "West John H. Gwynn Jr. Avenue [(Gwynn Jr. Avenue)] *** at or near its intersection with North Kane Street." Its work

- 2 -

required the removal of a portion of Gwynn Jr. Avenue and resulted "in an opening that dropped below the surface of the roadway" and encompassed "the entire width of the eastbound lanes of traffic."

¶ 7    Plaintiff alleged that at approximately 7:27 p.m. on October 10, 2022, the date of her accident, the driver of a Dodge Charger drove in an easterly direction on Gwynn Jr. Avenue and into the "opening in the roadway" at American Water's construction site. A tow truck was called to remove the vehicle, and Officer Doyle also responded to the scene. According to plaintiff, Doyle "identified [American Water's construction site] as having reflective traffic barricades on the side of the road; the reflective traffic barricades had been moved from the [*sic*] surrounding the construction hole where they had previously been placed to the side of the roadway by unknown persons." She alleged that after the Dodge Charger was towed away, Doyle "placed his police vehicle immediately west of the opening with police lights activated to warn drivers of the unsafe condition of the opening in the roadway." Doyle also called the City's streets department "to place additional barricades around the opening in the roadway." Between 7:27 p.m. and 7:52 p.m., Doyle "left the opening in the roadway *** to respond to [a call of] shots fired." At approximately 7:53 p.m., plaintiff was operating her vehicle in an easterly direction on Gwynn Jr. Avenue and drove into the opening in the roadway.

¶ 8    According to plaintiff, American Water "placed reflective barricades on both sides of the opening in the roadway." However, she alleged that at the time of her accident, federal mandates regarding traffic control devices set forth in the Manual of Uniform Traffic Control Devices (MUTCD) and rules adopted by the Illinois Department of Transportation (IDOT) also required the placement of signage at construction sites to warn motorists of road or lane closures, as well as the use of "channelizing devices," barricades, cones, and other traffic control devices.

Plaintiff further asserted that the City's department of public works was "obligated to maintain and keep in repair [the City's] streets and public ways." Work performed on any City street required a permit, and no permit was to be issued without a traffic control plan that complied with MUTCD.

¶ 9 In allegations common to all eight counts of her complaint, plaintiff further maintained that both American Water and the City were responsible for properly barricading, providing lighting, marking, and warning of road closures or openings in roadways in connection with work performed by American Water on City streets. She maintained, however, that American Water "only placed reflective barricades at the location of the opening" on Gwynn Jr. Avenue and that it did not place any (1) "warning signs prior to the opening in the roadway," (2) "signs warning of the road closure ahead," (3) "lighted signs warning of the opening in the roadway," or (4) "lighted barrels and/or lighted barricades at or near the opening in the roadway."

¶ 10 In counts IV and V of her complaint, alleging negligence and willful and wanton misconduct against the City, plaintiff maintained that the City owed her a duty to use ordinary care in supervising the construction on its roadways, use ordinary care in maintaining its roadways and construction sites, take reasonable precautions "to adequately barricade, supervise, and protect against injury," use reasonable care to avoid injury by the traveling public, close streets if improvements or repairs could not be made safely, warn of hazards on its roadways, and refrain from willful and wanton misconduct in maintaining its construction sites and repairs upon its roadways. According to plaintiff, the City breached its duties with respect to American Water's roadwork on Gwynn Jr. Avenue by (1) failing to properly barricade the roadwork; (2) failing to notify or warn drivers of the road construction, lane closure, or closed roadway; (3) failing "to properly secure and and/or barricade the construction site"; (4) failing "to properly cover the

opening in the road"; (5) failing "to properly barricade and place signage regarding a road closure"; (6) failing "to properly barricade and place signage regarding dangerous road conditions due to road construction"; (7) improperly following or failing to follow or implement codes and regulations relating "to the placement of road barricades, traffic flow devices, warning devices, protective devices, protective actions, and other violations of codes and regulations in the roadwork and construction"; (8) failing to properly follow contractual and ordinance obligations with American Water "as to the placement of road barricades, traffic flow devices, warning devices, protective devices, protective actions, and other violations of codes and regulations in the roadwork and construction work"; (9) failing to take precautions to adequately warn drivers of the construction "considering [the] inadequate lighting to see the construction site in the dark"; (10) failing to close the roadway due to the hole from the construction work; (11) failing to "provide a well-marked detour around the hole"; (12) voluntarily undertaking to perform roadwork and/or road construction "and [doing] so in a negligent and/or willful and wanton way"; (13) voluntarily undertaking to provide safety precautions or warnings after the first accident and executing the safety precautions and warnings in a negligent fashion; (14) failing "to provide adequate warning signs, barricades, lighted warnings, road closure signs, road covers, or proper construction site warnings in violation of various laws, ordinances, construction standards, and/or construction regulations"; and (15) failing to properly supervise American Water's work.

¶ 11      In counts VI, VII, and VIII, alleging negligence, voluntary undertaking, and willful and wanton misconduct against Doyle, plaintiff alleged that Doyle observed and assessed the construction site before her accident "and found it to be an unreasonably dangerous condition." Plaintiff alleged that Doyle owed her a duty to use ordinary care in the execution of his duties as a City employee "to guard against injuries." She also asserted that Doyle "voluntarily undertook to

provide protection for drivers on the roadway by providing warnings and activating police lights to warn against the dangerous work site and construction site." According to plaintiff, Doyle breached his duty and voluntary undertaking, and acted willfully and wantonly, as follows:

"(a)     Left the scene of the dangerous work site without ensuring it would be safe for approaching drivers in the roadway;

(b)     Failed to secure a safe work site and construction site when he left;

(c)     Failed to properly ensure the safety of drivers on the roadway by leaving a dangerous work site and/or construction site;

(d)     Failed to ensure that the dangerous work site and/or construction site had adequate lighting, barricading, signage, and covering over the hole in the roadway; and

(e)     Failed to ensure the [City] was adequately and timely going to take over and provide adequate warning of safety measures when he left a dangerous work site and/or construction site."

¶ 12     In August 2024, the City and Doyle filed a motion to dismiss each of plaintiff's claims against them pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2024)). They maintained they were immune from tort liability under the Act and that plaintiff's claims were otherwise preempted by American Water's contractual obligations.

¶ 13     Initially, defendants argued that plaintiff's claims against the City in counts IV and V were barred by both section 2-201 and section 3-104 of the Act (745 ILCS 10/2-201, 3-104 (West 2024)). Section 3-104, entitled "Failure to provide traffic signals and signs," provides that local public entities and public employees are immune from "the failure to initially provide

regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." *Id.* § 3-104. In turn, section 2-201, entitled "Determination of policy or exercise of discretion," states "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* § 2-201. According to defendants, plaintiff's allegations concerned the City's decisions regarding the placement of regulatory traffic control devices at the construction site and both sections 3-104 and 2-201 provided immunity under such circumstances.

¶ 14　　　　Next, defendants argued that plaintiff's claims against Doyle were barred by section 2-201 and section 4-102 of the Act (*id.* §§ 2-201, 4-102). While section 2-201 immunizes a public employee's discretionary acts (*id.* § 2-201), section 4-102 of the Act, entitled "Police Protection," immunizes local public entities and public employees from the "failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals" (*id.* § 4-102). Defendants suggested that plaintiff's allegations against Doyle—that he left the scene of the construction site, failed to secure a safe work site, failed to ensure that the site was adequately barricaded, and failed to ensure that the City would "take over responsibility for the warnings"—encompassed discretionary acts and were tantamount to a claim that he failed to provide police protection.

¶ 15　　　　As indicated, the City and Doyle also argued that the counts against them should

be dismissed because they were preempted by American Water's contractual obligations with the City. They pointed out that plaintiff had attached the contract between American Water and the City to her second amended complaint, which established that American Water and its contractors "were responsible for the construction and any related signage, lighting, and barricading" at the road construction site. According to defendants, American Water, alone, was liable for negligence and misconduct related to the work necessary to repair its water system.

¶ 16        In October 2024, plaintiff filed a response to the City and Doyle's motion to dismiss. She argued that although defendants asked for a judgment on the pleadings, they raised legal arguments that required factual determinations, which would be more appropriately raised in connection with a motion for summary judgment. Plaintiff maintained there were insufficient facts for the trial court to decide the matter at the dismissal stage.

¶ 17        Plaintiff further argued that "[t]he basic premise" of her claim in count IV, alleging negligence against the City, was that the City breached its duty to oversee the work performed on its streets by allowing the work to be done in an unsafe manner. According to plaintiff, defendants had set forth no provision of the Act showing they were "immune for negligently overseeing, approving, and/or acquiescing in the work being performed by" American Water. Plaintiff also asserted that a municipality can be liable for its negligent placement of the wrong sign, noting its allegation that American Water had placed reflective barricades at the construction site. Additionally, she maintained section 3-104 of the Act "only applie[d] to the permanent placement of signs, not construction sites."

¶ 18        Regarding defendants' allegations that they were immune from liability for discretionary decisions under section 2-201 of the Act, plaintiff argued that "discretionary immunity" did not apply to circumstances involving the implementation of construction plans and

argued her lawsuit alleged negligence by the City "in the ministerial decisions it made in enforcing and carrying out the construction work on [the] roadway." She also maintained that defendants broadly claimed that Doyle's actions were discretionary without offering any proof or evidence, failing to meet their burden of showing the Act applied. With respect to her claims against Doyle, plaintiff further asserted that the plain language of section 4-102 of the Act did not apply to Doyle's actions, and she argued that defendants failed to meet their burden of showing that Doyle's conduct constituted "a 'police protection or service.' " Finally, plaintiff argued that the contracts between American Water and the City were "codified into law" as City ordinances. She asserted that an ordinance is a law and that a violation of an ordinance "can provide a private cause of action in certain circumstances."

¶ 19    On October 30, 2024, the trial court conducted a hearing on the City and Doyle's motion to dismiss. In presenting their arguments, defendants characterized plaintiff's second amended complaint as "alleging that she was injured for failure to basically barricade and warn." They also argued that all of plaintiff's claims amounted "to the City failing to barricade or warn in regards to the construction work." Defendants further asserted that plaintiff's allegations that Doyle "failed to secure the scene" or ensure "that proper traffic control barricades were put up" constituted "a police protection service." In response, plaintiff primarily argued there was insufficient factual support in the record to go forward with a section 2-619 motion to dismiss for tort immunity and that many facts in the case remained unknown. She also argued that the placement of traffic control devices at a construction site was "completely different than placing out permanent traffic signs."

¶ 20    Following the parties' arguments, the trial court noted that it was required to take the allegations in plaintiff's second amended complaint as true when ruling on defendants' motion

to dismiss. Specifically, the court stated as follows:

"So I start with what [plaintiff has] alleged as being true and I think even the City has to for purposes of their motion to dismiss, if they're going to attack the facts then they've got to attach affidavits and the like, and that would be more probably in the form of a summary judgment motion.

So [defendants are] acknowledging that what [plaintiff has] pled in [her] complaint for purposes of this motion is true. So what I'm left with is to apply the facts that you've alleged against [defendants'] arguments, which are the immunities that all municipalities have, and you've got to acknowledge that they're very broad."

¶ 21 Ultimately, the trial court found defendants' arguments were "well-taken" with respect to counts IV through VIII of plaintiff's complaint. It stated that it "believe[d] the broad immunities that apply to municipalities would apply here" and granted defendants' motion. After the court's ruling, the following colloquy occurred between plaintiff's counsel and the court:

"MR. JENNET[T]EN [(PLAINTIFF'S ATTORNEY)]: *** I want to clarify this: I'm not agreeing that your interpretation of the Plaintiff's complaint arises to the 619 or the Defendant's [*sic*] arguments in this. But in doing that, I'm recognizing that you're stating that the Plaintiff's facts allege this, correct?

THE COURT: I'm not sure I follow you, but my ruling was that the City[ ] [and Doyle's] arguments are well-taken and pursuant to 619, which allows motions to dismiss with prejudice based on defenses—

MR. JENNE[T]TEN: Sure.

THE COURT: —they have a defense that I believe is applicable to the facts

that you've alleged in your complaint.

MR. JENNE[T]TEN: Yes. So with regard to that, are you stating that no set of facts could apply to this or that the Plaintiff could allege facts that fall within—

THE COURT: Oh, I don't know if the Plaintiff can allege facts, but I've dismissed them out pursuant to 619, so they're out of the case.

MR. JENNE[T]TEN: Okay. So are you giving Plaintiff leave to refile?

THE COURT: No, this is a 619 motion.

MR. JENNET[T]EN: Okay. So you're saying—and in outlining this, I don't—there are a bunch of different things—are you going to put in the order which immunities apply to which counts and how they apply?

THE COURT: I'm going to grant the motion—

MR. JENNE[T]TEN: Okay.

THE COURT: —and I'll have the City prepare an order—

MR. JENNE[T]TEN: Okay."

In November 2024, the court entered a written order, stating the City and Doyle's motion to dismiss counts IV through VIII of plaintiff's second amended complaint was granted and that the dismissal was with prejudice.

¶ 22    In December 2024, plaintiff filed a "Motion for Reconsideration, Motion for Clarification, and/or Motion to Amend," along with a memorandum in support of her filing. Plaintiff argued the trial court misapplied the law in granting defendants' motion to dismiss and asked that it reconsider and reverse its ruling. Alternatively, she asked that the court clarify its ruling, as it failed to give her notice "of why the case was dismissed." Specifically, she complained she had "no idea which sections of the *** Act were used by this Court to enter judgment" or

"what facts were used in the application of the *** Act." Plaintiff also asked that the court grant her leave to file an amended complaint. She complained that the court denied her oral request to amend at the time of dismissal and asserted that "if [she] was able to factually plead the complaint to move forward with the case [she] should be allowed to amend."

¶ 23      In January 2025, the City and Doyle filed a response and supporting memorandum. They argued that plaintiff's claims against the City in counts IV and V heavily relied on allegations that the City failed to place various traffic control devices and was, therefore, properly dismissed under section 3-104 of the Act, which protects a municipality from failing to initially provide traffic control devices, signs, markings, lights, and the like. Defendants argued plaintiff's claims against Doyle in counts VI, VII, and VIII were properly dismissed under section 4-102 of the Act, which protects a municipality and its employees from failing " 'to provide adequate police protection or service.' " (quoting 745 ILCS 10/4-102 (West 2024)). They asserted section 4-102 was broad in scope and applied to Doyle's actions as alleged by plaintiff.

¶ 24      In March 2025, the trial court conducted a hearing on plaintiff's motion. A different trial judge presided over the hearing than the judge who had ruled on and granted the City and Doyle's motion to dismiss. Ultimately, the court denied the motion, stating it would not substitute its thought process for that of the prior judge and that it would adopt the argument and reasoning set forth "in the defense memorandum in response to [plaintiff's] motion [for reconsideration, clarification, or to amend]." The same day as the hearing, the court entered a written order, denying plaintiff's motion and finding its order was final and appealable under Illinois Supreme Court Rule 304(a) (eff. March 8, 2016).

¶ 25      This appeal followed.

¶ 26                                  II. ANALYSIS

¶ 27 On appeal, plaintiff argues the trial court erred in granting the City and Doyle's motion to dismiss pursuant to section 2-619(a)(9) of the Code. She contends defendants failed to meet their burden of showing that provisions of the Act applied to render them immune from her claims or that her claims were preempted by American Water's contractual obligations with the City. Plaintiff further maintains that the court erred in dismissing her claims against the City and Doyle with prejudice and denying her leave to amend her pleading.

¶ 28 A. Dismissals Under Section 2-619

¶ 29 "A motion to dismiss under section 2-619 [citation] admits the sufficiency of the complaint but asserts a defense outside of the complaint that defeats it." *O'Connell v. County of Cook*, 2022 IL 127527, ¶ 19. Under section 2-619(a)(9) of the Code, the trial court may involuntarily dismiss a claim when it "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2024). " 'Affirmative matter' encompasses any defense other than a denial of the essential allegations of the plaintiff's claim." *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 19. As a result, "a section 2-619 motion admits as true all well-pleaded facts and all reasonable inferences drawn from those facts." *Id.*

¶ 30 Additionally, when deciding a section 2-619 motion to dismiss, a court "must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Id.* The motion should be granted only "when it appears that no set of facts can be proved that would allow the plaintiff to recover." *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 11. Dismissals under section 2-619 are subject to *de novo* review. *Mercado*, 2025 IL 129526, ¶ 19.

¶ 31 B. Tort Immunity

¶ 32 "Immunity from tort liability pursuant to statute is an affirmative matter properly

raised in a section 2-619 motion to dismiss." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 54; see *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 55 (" 'Affirmative matter' under section 2-619 of the Code may include immunity under the Act."). "The Act's purpose is to protect local public entities and public employees from liability arising from the operation of government." (Internal quotation marks omitted.) *Strauss*, 2022 IL 127149, ¶ 55.

> "In 1965, the General Assembly enacted the Act (see 1965 Ill. Laws 2982), which adopted the principle that local government entities may be liable in tort but that any such liability is limited by immunities based on certain government functions. [Citation.] Accordingly, the Act governs whether and in what situations local government entities are immune from liability in tort. *Id.*

¶ 33 Whether a party "was negligent is a distinct question from whether a statutory immunity applies." *Eddington v. City of Springfield*, 2025 IL App (4th) 241630, ¶ 17. Further, because immunity under the Act operates as an affirmative defense, governmental entities have the burden of pleading and proving their immunity. *Strauss*, 2022 IL 127149, ¶ 56. "A plaintiff's right to recovery is barred only when the governmental entity has met this burden." *Id.* "If no immunity provision applies, the governmental entity is liable in tort to the same extent as private parties." *Id.*

¶ 34                              1. *Plaintiff's Claims Against the City*

¶ 35 As stated, in counts IV and V of her second amended complaint, plaintiff alleged negligence and willful and wanton misconduct by the City. The City moved to dismiss plaintiff's claims, arguing they were barred by sections 2-201 and 3-104 of the Act. The trial court granted the motion based on the City's immunity arguments. We agree that section 3-104 applies to the facts presented.

¶ 36        Section 3-104 of the Act provides as follows:

"Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." 745 ILCS 10/3-104 (West 2024).

The statutory language immunizes the failure to initially provide traffic control devices, signs, or road markings, but not the improper placement of such devices, signs, or road markings. *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 216 (2006). Under section 3-104, the legislature clearly intended "to immunize *absolutely* the failure to initially provide a traffic control device, even where such failure might endanger the safe movement of traffic." (Emphasis in original and internal quotation marks omitted.) *West v. Kirkham*, 147 Ill. 2d 1, 8 (1992).

¶ 37        Recently, in *Eddington*, 2025 IL App (4th) 241630, ¶ 20, this court discussed the scope of the immunity set forth under section 3-104, stating it was "rather nuanced in its application." In that case, the plaintiff sued the City of Springfield after her vehicle struck a downed light pole that had been previously struck by another driver less than an hour before. *Id.* ¶¶ 5-8. Like the case at bar, a police officer responded to the scene of the first accident but left prior to the plaintiff's accident. *Id.* ¶¶ 7-8. The plaintiff complained the defendant city was liable because the light pole was left unmarked and unguarded. *Id.* ¶ 10. On review, we found the plaintiff's claims fell within the scope of section 3-104. *Id.* ¶ 33.

¶ 38        In discussing that statutory provision, we noted that courts had "interpreted the statute to encompass both permanent and temporary methods of controlling traffic and warning

motorists of dangerous road conditions," including the placement of traffic control devices or warnings at construction sites. *Id.* ¶ 21. We also emphasized that the immunity provided in section 3-104 extended only to an injury caused by the " 'initial[ ]' failure to provide traffic control devices or warnings." *Id.* ¶ 22 (quoting 745 ILCS 10/3-104 (West 2020)). In other words, "if a local public entity never undertook to provide a specific traffic control device or warning, the entity may not be held liable for damages caused by such failure." *Id.* However, the immunity in section 3-104 does not apply to liability in connection with injuries caused by the negligent maintenance or removal of existing traffic control mechanisms or protection devices. *Id.*

¶ 39        In *Eddington*, we further recognized that applying section 3-104 could "lead to subtle distinctions, even within a single case." *Id.* ¶ 23. As an example, we cited a First District case that held "section 3-104 did not immunize a city from a plaintiff's allegations that it negligently placed cones to regulate traffic, even though the statute immunized the city from allegations that it should have placed cones in *additional locations* or provided a 'flagman' to warn motorists." (Emphasis added.) *Id.* (citing *Jefferson v. City of Chicago*, 269 Ill. App. 3d 672, 677-78 (1995)). We also cited a prior decision of this court, which "considered how section 3-104 applied where local public entities installed a stop sign at an intersection but then failed to replace that sign or warn the public of the danger after the sign was removed by 'persons unknown.' " *Id.* (quoting *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 766 (1996)). We noted our holding "that section 3-104 did not shield the defendants from the plaintiff's allegations that she was injured due to the defendants' failure to maintain the stop sign" but that it did shield them from the plaintiff's claims that the defendants failed "to warn her of the missing stop sign 'by posting barricades or other traffic control devices.' " *Id.* (quoting *Corning*, 283 Ill. App. 3d at 771).

¶ 40        Finally, in *Eddington*, we stated that section 3-104 provides "absolute immunity

- 16 -

when a plaintiff's allegations fall within its scope, even if the defendant had notice of the specific unsafe condition that caused the plaintiff's injury." *Id.* ¶ 24. The statute's application also does not "depend on the severity of the danger posed to the public." *Id.* Ultimately, "to determine whether immunity applies in a given case, it is necessary to consider exactly what the local public entity or public employee did and did not do, along with the plaintiff's specific theory of how the defendant's negligence caused an injury." *Id.* ¶ 25.

¶ 41    In the present case, plaintiff alleged the City had a duty to maintain its property in a reasonably safe condition and that it was responsible for American Water's work upon its roadway. In the common allegations of her complaint, she alleged that American Water had "only placed reflective barricades at the location of the opening" on Gwynn Jr. Avenue. Plaintiff maintained, however, that federal mandates and rules adopted by IDOT required the placement of additional signage and other traffic control devices. Plaintiff specifically complained that American Water did not place any (1) "warning signs prior to the opening in the roadway," (2) "signs warning of the road closure ahead," (3) "lighted signs warning of the opening in the roadway," or (4) "lighted barrels and/or lighted barricades at or near the opening in the roadway." In her specific counts against the City, plaintiff then raised broad allegations that the City was negligent in failing to properly barricade or place signage at the construction site, warn drivers of the road construction and lane closure, "cover the opening in the road," implement or follow codes and regulations that pertained to roadwork and construction, or supervise American Water's work.

¶ 42    Taking together plaintiff's allegations common to all counts of her second amended complaint and those specific to the City, the primary theory of her case appears to be that she was injured due to the failure of American Water—and, by extension, the City—to place certain traffic control devices or warnings at the construction site in addition to the reflective barricades already

placed by American Water. This theory clearly implicates section 3-104, as it suggests a "failure to initially provide" some type of specific traffic control or warning device. 745 ILCS 10/3-104 (West 2024). Accordingly, to the extent plaintiff alleged the City was negligent in failing to place other barricades, signs, or makings at or around the construction site, section 3-104 applies to shield the City from liability.

¶ 43    On appeal, plaintiff acknowledges that section 3-104 applies to immunize a city's failure to initially place "regulatory and warning signs as well as barriers." However, she maintains the statute is inapplicable to her case because she alleged facts showing "that the signage in place that caused [her] injuries did not conform to city code or with existing safety standards." Plaintiff further contends that the City should not have "blanket immunity" under section 3-104 for the "placement of signage and barriers in an unsafe manner."

¶ 44    Initially, the facts alleged by plaintiff in her second amended complaint show only that American Water placed reflective barricades at the site of its construction, not any type of signage. Additionally, plaintiff did not allege in her complaint that American Water (or the City) placed the reflective barricades in a way that was unsafe. Instead, her contention appears to be that American Water and the City should have placed *additional* barricades, traffic control devices, warning signs, or markings in and around the site of the construction. Stated another way, rather than complaining about the way the reflective barricades were placed by American Water, plaintiff complains that contrary to various rules, regulations, or codes, American Water failed to place *other* barriers, warning signs and devices, lights, and markings to alert drivers to the construction and channel traffic. Section 3-104 clearly immunizes the City from liability based upon such allegations.

¶ 45    We note that in paragraph 53 of the common allegations of her compliant, plaintiff

alleged that Doyle identified the construction site "as having reflective traffic barricades on the side of the road." She further stated that "the reflective traffic barricades had been moved from the [*sic*] surrounding the construction hole where they had previously been placed to the side of the roadway by unknown persons." Such factual allegations could be read as supporting a claim that the City failed to maintain an existing traffic control device, a claim that would not implicate the immunity in section 3-104. See *Corning*, 283 Ill. App. 3d at 771 (holding section 3-104 does not apply to claims premised on a failure to maintain an existing traffic control device).

¶ 46        However, plaintiff's allegations against the City ultimately do not set forth such a claim. Notably, plaintiff makes no factual allegation as to where the reflective barricades were at the time of her accident, nor does she assert that her injury was caused by any movement, removal, or misplacement of the existing reflective barricades. Her descriptions of the City's negligent acts or omissions also fail to include an allegation that the City failed to *maintain* the reflective barricades that American Water did place at the opening in the roadway. Again, the primary focus of plaintiff's allegations is the City's failure to place other or additional traffic control or warning devices, not on any negligence with respect to the existing reflective barricades. Significantly, on appeal, plaintiff also does not argue that her complaint established a claim for negligent maintenance of the reflective barricades, and she does not reference the factual allegations of paragraph 53 of her complaint in the argument section of her appellate briefs. Thus, even viewing the second amended complaint in the light most favorable to plaintiff, we cannot view it as alleging a claim against the City for the negligent maintenance of the existing barricades.

¶ 47        Finally, we note that in counts IV and V of her second amended complaint, plaintiff also alleged the City acted negligently because it "[v]oluntarily undertook to provide safety precautions and warnings after another accident occurred prior to [plaintiff's] and executed the

safety precautions and warnings in a negligent fashion." Although vague, plaintiff's claim presumably references her factual allegations that Doyle (1) responded to the scene of the first accident at the construction site "in his official capacity as a police officer for" the City, (2) "placed his police vehicle immediately west of the opening with police lights activated to warn drivers of the unsafe condition of the opening in the roadway" and (3) "left the opening in the roadway he was acting as a warning for" prior to plaintiff's accident to respond to a call that gunshots had been fired somewhere in the City.

¶ 48         Section 3-104 does not apply to this negligence allegation. In particular, section 3-104 does not provide immunity where a plaintiff alleges her injury was caused by the *removal* of traffic protections at a work site. See *Eddington*, 2025 IL App (4th) 241630, ¶ 31 (suggesting that allegations that a police officer departed the scene of an accident after using his squad car as a barrier or his vehicle lights as a warning sign for an obstruction in the roadway could constitute the removal of a protective mechanism, which would not be immunized by section 3-104). Nevertheless, as will be discussed below, plaintiff's claims based on Doyle's alleged negligent actions in departing the scene after the first accident are immunized under a different section of the Act, section 4-102 (745 ILCS 10/4-102 (West 2024)). That section operates to shield both local public entities and public employees from liability "for failure to provide adequate police protection or service." *Id.* Although defendants did not raise section 4-102 when seeking to dismiss counts IV and V against the City, they did raise it in seeking to dismiss plaintiffs' claims against Doyle, which were based on the same factual allegations regarding his placement of his police vehicle after the first accident and his departure from the scene prior to plaintiff's accident. As set forth below, because section 4-102 applies to plaintiff's alleged facts, it operates to immunize both Doyle and the City from liability. See *id.* § 2-109 ("A local public entity is not liable for an injury

resulting from an act or omission of its employee where the employee is not liable.").

¶ 49 Taking plaintiff's allegations against the City as true and viewing them in the light most favorable to her as the nonmoving party, we find the Act does apply to plaintiff's claims. Accordingly, the trial court committed no error in granting the City's motion to dismiss counts IV and V of plaintiff's second amended complaint.

¶ 50                           2. *Plaintiff's Claims Against Doyle*

¶ 51 In counts VI, VII, and VIII of her second amended complaint, plaintiff raised claims against Doyle, alleging negligence, voluntary undertaking, and willful and wanton misconduct. Doyle moved to dismiss plaintiff's claims, arguing they were barred by sections 2-201 and 4-102 of the Act. Again, the trial court granted the motion based on Doyle's immunity arguments. We agree that plaintiff's claims are barred by section 4-102.

¶ 52 Section 4-102 of the Act states as follows:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." *Id.* § 4-102.

"Section 4-102 addresses situations where no police protection is provided to the public and where inadequate protection is provided." *Schultz v. St. Clair County*, 2022 IL 126856, ¶ 22. The statutory language is not qualified, containing "no exception for willful and wanton misconduct." *Id.*

¶ 53 Additionally, although the Act does not define "police protection service," "reviewing courts have generally cited this clause when granting immunity to police officers and other public employees who allegedly caused injury while performing, or failing to perform, some

policing function *other than* traditional law enforcement." (Emphasis in original.) *Glover v. City of Chicago*, 2023 IL App (1st) 211353, ¶ 62. "Police efforts to aid, assist, or rescue individuals" have been found to be "within the scope of 'police protection or service' and *** covered under section 4-102 of the Act." *Payne v. City of Chicago*, 2014 IL App (1st) 123010, ¶ 33. Relevant to this case, the immunity set forth in section 4-102 has specifically been held to apply "where police officers were providing aid, assistance, or rescue services to stranded drivers and vehicles involved in traffic accidents." *Glover*, 2023 IL App (1st) 211353, ¶ 62; see *Long v. Soderquist*, 126 Ill. App. 3d 1059, 1065 (1984) (applying section 4-102 to the plaintiffs' claims that a deputy sheriff was negligent in responding to a traffic accident and failing to have vehicles removed from the roadway or to warn other drivers of the accident); *Kavanaugh v. Midwest Club, Inc.*, 164 Ill. App. 3d 213, 221 (1987) (holding that "section 4-102 includes the police function of responding to a call of a traffic matter involving a motor vehicle that had been driven off the roadway and into a nearby retention pond").

¶ 54        Here, plaintiff alleged Doyle responded to the scene of the first vehicle accident at the construction site. At the scene, he "placed his police vehicle immediately west of the opening with police lights activated to warn drivers of the unsafe condition of the opening in the roadway." Doyle also "called the streets department" for the City to have "additional barricades around the opening in the roadway." Prior to plaintiff's accident, Doyle "received a call that gunshots had been fired somewhere in the [City]" and left the scene. Plaintiff alleged Doyle was negligent because he (1) left the scene without ensuring it would be safe for approaching drivers, (2) failed to secure a safe work or construction site when he left, (3) failed to ensure the safety of drivers on the roadway by leaving a dangerous work or construction site, (4) failed to ensure the dangerous work or construction site had adequate lighting, barricading, signage, and covering over the hole,

and (5) failed to ensure the City was going to take over and provide adequate warning and safety measures at the scene in a timely manner.

¶ 55    On appeal, plaintiff argues that defendants "failed to provide specific factual allegations or proof" to support a finding that Doyle's actions "constituted a police protection service" and that they "fell outside of traditional law enforcement" activities. She cites section 2-202 of the Act as "another portion of the Act that deals with the immunity of police officers." See 745 ILCS 10/2-202 (West 2024). That section, entitled "Execution or enforcement of law," provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *Id.* "Generally, section 2-202 is implicated when an officer engage[s] in a course of conduct designed to carry out or put into effect any law." (Internal quotation marks omitted.) *Glover*, 2023 IL App (1st) 211353, ¶ 64. Here, plaintiff contends that whether a police officer is executing or enforcing a law under section 2-202 or providing police protection or service under section 4-102 is a question of fact that generally cannot be determined on the face of a complaint and that dismissal under section 2-619 "is improper without a more factually supported record." Thus, she argues dismissal in the instant case based upon the application of section 4-102 was improper.

¶ 56    To support her argument, plaintiff relies on *Glover*. There, the plaintiff sued the City of Chicago, two Chicago police officers, and other city employees for injuries he sustained after being shot by a third party. *Id.* ¶ 1. The trial court dismissed the plaintiff's action, finding, relevant to this appeal, that the defendants were immune under section 4-102 of the Act. *Id.* ¶ 2. On appeal, the plaintiff sought the reversal of the dismissal of two counts of his complaint that alleged willful and wanton conduct, arguing, in part, that the court had misapplied section 4-102 and that the allegations of his complaint, instead, implicated section 2-202 of the Act, which did

not immunize willful and wanton misconduct. *Id.* ¶ 33. The plaintiff argued it was premature for the court to dismiss his claims where there were questions of fact as to whether the defendants were enforcing or executing the law as contemplated by section 2-202 or engaged in the type of activities described in section 4-102. *Id.*

¶ 57 On review, the First District agreed. *Id.* ¶¶ 76, 78. The court recognized that the question of whether a police officer was executing and enforcing the law or providing police protection service was generally a factual determination to be made in light of the circumstances involved. *Id.* ¶ 76. It further stated as follows:

> "In this case, all we have before us is a complaint alleging police conduct that might be described as a failure to protect or, just as reasonably, as acts and omissions in the execution and enforcement of the law. Because this is a scenario that implicates two broad immunity provisions, determining which of these general tort immunity provisions controls is a factual question that can only be made on a more factually developed record." *Id.*

¶ 58 We find the present case is distinguishable from *Glover*. The facts alleged by plaintiff show Doyle provided assistance at the first accident scene by placing his squad car west of the hole in the roadway as a barrier and activating the lights of his police vehicle to serve as a warning. They also show that Doyle called the City's "streets department" for additional barricades. Plaintiff's complaint does not contain any allegations that Doyle was investigating criminal activity or attempting to enforce any law. Unlike in *Glover*, where the plaintiff's complaint alleged police conduct that could reasonably "be described as a failure to protect or *** as acts and omissions in the execution and enforcement of the law," plaintiff's allegations in this case reflect only a failure to adequately provide police protection or service. *Id.* Notably, on

review, plaintiff points to no specific fact alleged in her second amended complaint that would support a finding that Doyle was engaged in conduct "designed to carry out or put into effect any law." (Internal quotation marks omitted.) *Id.* ¶ 64. We find this case more similar to *Long*, 126 Ill. App. 3d at 1065, and *Kavanaugh*, 164 Ill. App. 3d at 221, where section 4-102 was found to apply in the face of claims that law enforcement officers were negligent in responding to motor vehicle accidents.

¶ 59    Taking the allegations of the second amended complaint as true and viewing them in a light most favorable to plaintiff, the complaint reflects a claim that Doyle was engaged in "police protection or service," not the execution or enforcement of any law. Accordingly, we find the trial court committed no error in granting defendants' motion to dismiss plaintiff's claims against Doyle in counts VI, VII, and VIII of her second amended complaint.

¶ 60                              C. Contractual Preemption

¶ 61    On appeal, the parties further dispute whether plaintiffs' claims against the City and Doyle were barred by the City's contract with American Water. We note that although defendants raised this claim in their motion to dismiss, it does not appear to be a basis for the trial court's grant of the motion. Specifically, when ruling on the motion to dismiss, the court stated as follows: "I believe the broad immunities that apply to municipalities would apply here." The court's comments indicate it was persuaded by defendants' contentions regarding application of the Act, not their contract-based claim. Further, even assuming the court did rely on contractual preemption as a basis for dismissal, given our holding that sections 3-104 and 4-102 of the Act shield the City and Doyle from liability, we find it unnecessary to address this additional issue.

¶ 62                              D. Leave to File an Amended Complaint

¶ 63    Finally, plaintiff argues the trial court erred by dismissing her claims against the

City and Doyle with prejudice and denying her leave to amend her pleading. She complains that the court improperly failed "to identify the facts [it] applied to the sections of immunity" when granting dismissal. She posits that "if [she] was able to factually plead the complaint to move forward with the case [she] should be allowed to amend."

¶ 64 "Whether to dismiss an action with or without prejudice is a matter within the trial court's discretion." *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1046 (2009). "On review, we consider whether the court took the particular facts and unique circumstances of the case into account before determining that the case should be dismissed with prejudice." *Id.* Additionally, "[t]he failure to offer a proposed amendment is generally fatal for review of the exercise of discretion by the circuit court." *Moss v. Gibbons*, 180 Ill. App. 3d 632, 639 (1989).

¶ 65 Here, to the extent plaintiff contends the trial court failed to identify the facts pertinent to its dismissal, we disagree. In initially setting forth its ruling, the court clearly asserted that it was relying on the facts as alleged by plaintiff in her second amended complaint, taking them as true. The court's comments also reflect that it was accepting defendants' immunity arguments, finding them "well-taken." Moreover, both defendants' motion to dismiss and their arguments at the hearing on that motion identified the immunities they believed applied to each count against them, the facts alleged by plaintiff relevant to those provisions, and their characterization of plaintiff's claims. Plaintiff had sufficient information from which to understand the court's ruling.

¶ 66 We note that in connection with her motion to reconsider, plaintiff argued the trial court erred by denying her oral motion to amend her pleading at the time of dismissal. However, the record fails to reflect that she made such a motion. Instead, it shows plaintiff merely sought clarification regarding whether the court was giving her leave to refile. Either way, the court stated

that dismissal was granted with prejudice, explaining that it found defendants had "a defense *** applicable to the facts that [plaintiff had] alleged in [her] complaint." Notably, before the trial court, plaintiff never presented a proposed amended complaint. Nor at any stage, including on appeal, has she otherwise pointed to any specific facts that might support the filing of a third amended complaint and avoid application of the relevant immunity provisions of the Act. Rather, plaintiff has simply speculated that facts exist that might allow her complaint to move forward and placed the burden entirely on the trial court to identify such facts. Under the circumstances presented, we find no abuse of discretion by the court in granting the City and Doyle's motion to dismiss with prejudice.

¶ 67                                        III. CONCLUSION

¶ 68            For the reasons stated, we affirm the trial court's judgment.

¶ 69            Affirmed.